Nott, J.,
delivered the following opinion:
On the 7th August, 1882, Congress passed an act for the relief of the claimant in the following terms: ,
“That the Quartermaster-General of the United States is hereby authorized and directed to examine and adjust the *72 claims of Julia A. Nutt, widow and executrix of Haller Nutt, deceased, late of Natchez, in the State of Mississippi, growing out of the occupation and use by the U. S. Army, during the late rebellion, of the property of the said Haller Nutt, during his lifetime, or of his estate after his decease, including live stock, goods, and moneys taken and used by the United States or. the armies thereof; and he may consider the evidence heretofore taken on said claim, so far as applicable, before the Commissioners of Claims, and such other evidence as may be adduced before him in behalf of the legal representatives of Haller Nutt, or in behalf of the United States, and shall report the facts to Congress to be considered with other claims reported by the Quartermaster-General: Provided, That no part of said claims upon which said Commissioners of Claims have passed on the merits shall be considered by the Quartermaster-General.” ('Act 7th August, 1S82, 22 Stat. L. 734.)
So far as the present action is involved the following are the important and mandatory words of the act:
“ That the Quartermaster-General is hereby authorized and directed to examine and adjust the claims of Julia A. Nutt, widow and executrix, and shall report the facts to Congress to be considered with other claims reported by the Quartermaster-General.”
The Quartermaster-Geueral accordingly investigated the claims, and on the 22d December, 1882, made a long and minute report to Congress, which detailed the methods of his investigation and concluded by recommending the payment of eighteen items, some of which were for property taken by the Army in Mississippi, some for property destroyed, and all of which amounted to $256,884.05.
This report was considered by Congress and an appropriation of $35,556.17 was made for the claimant by the Act 5th July, 1884 (23 Stat. L., 552-586), a statute which directed the payment of specified amounts to a number of persons named therein,- “ the same being in full for, and the receipt of the same to be taken and accepted in each case as a full and final discharge of, the several claims examined and allou-ed by the proper accounting officers under the provisions of the act Ath July, 1864.”
This amount of $35,556.17 was paid to and accepted by the claimant; but inasmuch as her claims were never examined or allowed by the accounting officers under the Act 4th July, 1864, it is maintained by her counsel that her acceptance of that amount does not operate as a full and final discharge, and on *73 tbe contrary leaves her free to maintain ber action for the balance of the amount.
As the property included in the report was taken or destroyed by the Army of the United States engaged in active hostilities in what was then enemy’s territory, no claim arose which courts of the United States could recognize as a right of action ; and this court, moreover, is expressly prohibited by the Aot UhJuJy, 1864 (13 Stat., L., p. 381, § 1), from entertaining j urisdiction of such cases. The claimant therefore rests the case entirely upon the private act of 1882 in connection with the report and recommendation of the Quartermaster-General and the appropriation act of 1SS1.
Thetheory by which the learned counsel for the claimant maintains the case is that the report of the Quartermaster-General was an award, obligatory and final, upon which an action can be founded irrespective of the claims and demands merged therein, or that if not an award it was at least “ an account stated,” recognized and ratified by the appropriation act which directed the payment of what was presumably a portion of the account.
A final award in which pre-existing demands are merged and upon which an action can be maintained involves the mutual submission of contested rights to the final determination of an arbitrator whose decision shall be obligatory upon eithvr party; but the court is of the opinion that in the present case no single right, legal or equitable, was submitted to the arbitrament of the Quartermaster-General, whose only duty, after examining and adjusting the “claims,” was to “report the facts ” for the “ consideration ” of Congress.
As to the second ground taken by counsel the court is of the opinion that “ an account stated ” grows out of commercial transactions, being the rendition of a running account by one party to the other and his acceptance or acquiescence in its accuracy and amount. It is therefore in legal effect but the liquidation of fractional items into a single amount by the agreement of parties, express or implied. In the present case the court is unable to perceive in the report of the Quartermaster-General a single element of an account stated. There was no running account between the parties; there had been no transactions which brought them within the usage or law of merchants; the account was not rendered by one party to the *74 other; time did not run against the Government so as to raise a presumption of acquiescence, and the subsequent payment of a part instead of the whole negatived the idea that the whole was acquiesced in by Congress and acknowledged as an indebtedness.
The private act was simply a direction by a principal, Congress, to an agent, the Quartermaster-General, to investigate a demand presented by a third person, the claimant, and report the facts for the consideration of his principal. If such a statute can be made a basis of legal liability it will be dangerous for Congress to seek information in any case, or give assistance to any claimant.
The judgment of the court is that the petition be dismissed.